HEARD NOVEMBER TERM, 1877.

NEELY *vs.* YORKVILLE.

Where the charter of a municipal corporation did not in express terms confer upon it a corporate name, and, although a name was given to the town itself, all the authority and powers of the corporation were conferred upon the Town Council: *Held*, That an action against the Intendant and Wardens of the Town Council of, &c., was properly brought.

A bond given by a municipal corporation for a debt incurred by it in executing a contract which the corporation had authority by its charter to make is valid and binding.

The Act of 1871 in relation to the town of Yorkville did not create a new corporation and substitute it in the place of the old corporation created by the Act of 1849, but such Act was a mere amendment of the Act of 1849, the corporation remaining liable for debts contracted by it before the Act of 1871 was passed.

A bond given by a municipal corporation, under its corporate seal, subscribed by the Intendant of the town, and countersigned by the Clerk and Treasurer of the Council: *Held* to be in the usual and proper form, and to be binding upon the corporation.

A plea of the Statute of Limitations is inapplicable to an action upon a bond given in June, 1861, by a municipal corporation.

A bond given by a municipal corporation for work done in macadamizing the streets of the corporation: *Held* to be valid and binding, and that the consideration might be proved by evidence *aliunde*.

Where a municipal corporation has authority under its charter to issue bonds to a certain amount, a bond given by it within the limited amount is at least *prima facie* valid; and if the corporation had previously exhausted its authority by issuing other bonds to the full extent of its power, the onus of showing the fact is upon the corporation.

A proviso to an Act authorizing a municipal corporation to issue bonds to a certain amount, that the private property of the citizens should not be liable for the payment of the bonds except by a regular and uniform taxation, was simply intended to protect the private property of the corporators from liability for the payment of the bonds, and not to preclude the holders thereof from obtaining judgment against the corporation.

A clause in the charter of a municipal corporation, granted in 1849, giving the corporation the same powers over the streets and roads of the town as those vested in the then Commissioners of Roads, did not prevent the corporation from issuing its bond for a debt contracted by it in improving the streets of the town.

BEFORE MACKEY, J., AT YORK, APRIL TERM, 1876.

This was an action entitled Eliza A. Neely, plaintiff, against William H. McCorkle, Intendant, and John R. Schorb, Joseph Herndon, Robert Wright and Edward Wheeler, Wardens, the "Town Council of Yorkville, in the State of South Carolina," defendants.

The complaint alleged that by an Act of this State, passed December 20th, 1853, entitled "An Act to give the Town Council of Yorkville the power to issue bonds of the corporation, and for other purposes," power was conferred on the Intendant and Wardens of said corporation "to issue interest-bearing bonds, which shall be binding on said corporation," to the amount of $5,000; that by an Act passed December 21st, 1854, the said Act of December 20th, 1853, was extended and made of force for the period of nine years from the said December 21st, 1854; that by the 19th Section of "An Act to incorporate certain towns and villages, and to renew and amend certain charters heretofore granted," passed January 28th, 1860, power was conferred on the Town Council of Yorkville to make contracts for lighting the streets of said town with gas, either by subscribing to the stock of any partnership or corporation organized for said purpose or otherwise, and to make payment for the same out of any moneys belonging to the corporation;" that the Town Council of Yorkville made a contract with George Waterhouse and Michael Bowes for lighting the streets of said town with gas, and agreed to pay them therefor the sum of $600; that said contract was made by said Town Council by virtue of their power and authority as such Town Council, under the Acts above mentioned, and also by virtue of their general power and authority as

such Town Council; and that on the fourth day of June, 1861, they evidenced their indebtedness to the said Waterhouse and Bowes by executing and delivering to them a bond for $600, a copy of which is as follows:

SOUTH CAROLINA,  }
   York District.     }

Know all men by these presents that the "Town Council of Yorkville," in the State aforesaid, acknowledges itself to owe unto George B. Waterhouse and Michael Bowes the sum of six hundred dollars, to be paid to the said Waterhouse and Bowes, or bearer, on the first day of January, 1862, together with interest thereon from the first day of May, 1861.

This bond is issued in pursuance of powers vested in said Town Council to make contracts for lighting the streets of said town of Yorkville with gas; and it is intended, acknowledged and delivered as the bond of said "Town Council of Yorkville" for six hundred dollars, due to said Waterhouse and Bowes for lamp posts and fixtures, used as aforesaid, for lighting the streets of the said town. In witness whereof, the said Town Council has caused its corporate seal to be hereunto affixed, and these presents to be subscribed by the Intendant of said town of Yorkville, and countersigned by the Clerk and Treasurer of said Council. June 4th, 1861.

[CORPORATE SEAL.]      A. I. BARRON, Intendant.
                      J. B. ALLISON, Clerk and Treasurer.

That payments were made on said bond in 1863, 1867 and 1868; that there is still due on said bond, with interest from May, 1861, the sum of $600; that the plaintiff is the lawful and innocent holder and owner of said bond, and that the defendants above named now compose the Town Council of Yorkville.

The answer denied that the Town Council of Yorkville ever lawfully executed the bond, or that they were ever authorized to execute any such bond, and alleged that before the bond sued on was given the Town Council of Yorkville had exhausted its power under the Act of December 20th, 1853, by issuing bonds to the amount of $5,000. It denied that defendants were indebted or responsible in any way for the claim sued on, pleaded that the claim was barred by the Statute of Limitations, and concluded by denying each and every allegation of the complaint.

At the trial defendants gave testimony tending to show that at the date of the alleged bond A. S. Barron was Intendant, and J. B. Allison, Clerk and Treasurer, of the Town Council of Yorkville; that the signatures to said bond and the seal of the Council were genuine; that the bond was drawn by the attorney of the Council; that the lamp posts and fixtures were erected and the town lighted with gas; and it was admitted that the plaintiff was the lawful holder and owner of the bond.

The defendants moved for a nonsuit on the ground that no cause of action had been established against them; that a judgment, if obtained under the pleadings, would operate against the defendants individually, and that the town of Yorkville was not a party to the action.

His Honor overruled the motion, and the defendants excepted.

The defendants then produced in evidence the books of the corporation for the purpose of showing what number of bonds had been issued under the Act of 20th December, 1853, and the amounts thereof, and also examined witnesses for the purpose of proving the same matters.

The judgment of His Honor the Circuit Judge is as follows:

This is an action brought for the recovery of a balance due on a bond executed by the corporate authorities of the town of Yorkville, S. C., to George P. Waterhouse and Michael Bowes for lamp posts and fixtures used in lighting the streets of Yorkville with gas. The plaintiff is the innocent purchaser and holder of the bond. By an Act of the Legislature, passed in 1860, (see page 920, § 19,) the Town Council are authorized to make contracts for lighting the streets of the town with gas, either by subscribing to the stock of any partnership or corporation organized for said purpose or *otherwise.* The bond was executed on the 4th of June, 1861, and in the body of the instrument it is recited that " this bond is issued in pursuance of power vested in said Town Council to make contracts for lighting the streets of said town of Yorkville with gas, and is intended, acknowledged and delivered as the bond of said Town Council of Yorkville for six hundred dollars, due to said Waterhouse & Bowes for lamp posts and fixtures used as aforesaid for lighting the streets of said town."

In addition to the authority conferred by the special Act of the Legislature above referred to, the execution of the bond comes within the scope of the general corporate authority of the Council, and especially within the powers conferred by the fourth Section of the charter.—See Act 1849, Vol. II, p. 588.

The Council had the power and the right to make the contract with Waterhouse & Bowes, and to evidence the indebtedness arising therefrom by executing the bond upon which this action is brought.

It is, therefore, ordered and decreed that the plaintiff have judgment for the sum of ten hundred and forty-one dollars and eighty-five cents, with interest thereon from the second day of April, 1876, and costs.

The defendants appealed, and now moved this Court to dismiss the complaint on the grounds that the Court erred:

1. In refusing to grant the nonsuit asked for and holding that the present proceeding is a proper one in a suit upon the bond.

2. In refusing to hold that the testimony was sufficient to show that the Town Council of Yorkville had issued bonds to the amount of five thousand dollars before the bond here sued upon was issued.

3. In holding that the statute either of 1849 (11 Stat., 588,) or the statute of 4th June, 1861, (12 Stat, 920,) authorized the issuing of the bond here sued on.

4. In holding that the Town Council had the right and power to make the contract with Waterhouse & Bowes and evidence the indebtedness arising therefrom by executing said bond.

5. In holding that the execution of said bond came within the scope of the general corporate authority of the Council.

6. In refusing to hold that the limitations of the Act of 21st December, 1854, (12 Stat., 386,) entered into and was a condition of any bond issued by said Council after that date.

7. In refusing to hold that the corporation of the town of Yorkville, incorporated under the Act of 1871, (14 Stat., 562,) was not liable on a bond executed by the corporation of the village of Yorkville, incorporated under the Act of 1849.

8. In refusing to hold that the bond sued on was not executed as provided by statute, and was, therefore, not binding on the defendants.

9. In refusing to hold that the claim of the plaintiff is only that of a simple contract debt, and is, therefore, barred by the Statute of Limitations.

10. In refusing to dismiss the complaint and give judgment against the plaintiff for the costs of this action.

Another case, brought by J. D. Currence and M. J. Watson against the same defendants, was heard at the same time and decided in the same way. The facts in the two cases were essentially the same, and what difference there was between them sufficiently appears in the opinion of the Court.

*Thomson, Spencer*, for appellants.

*Wilson & Wilson*, contra.

July 31, 1878. The opinion of the Court was delivered by

McIVER, A. J. These two cases, depending in great measure as they do upon the same principles, will be considered together. In the first the action was brought by the plaintiff as the lawful owner and holder on a bond bearing date 4th June, 1861, whereby " the Town Council of Yorkville" acknowledged itself to owe Waterhouse and Bowes the sum of six hundred dollars, to be paid to them or bearer on the first of January, 1862, with 'interest from the first day of May, 1861. From the recital in the bond it appears to have been issued in pursuance of power vested in said Town Council to make contracts for lighting the streets of the town of Yorkville with gas, and that it was "intended, acknowledged and delivered as the bond of said Town Council of Yorkville for six hundred dollars, due to said Waterhouse and Bowes for lamp posts and fixtures used as aforesaid for lighting the streets of the said town." The bond is signed by "A. J. Barron, Intendant," and "J. B. Allison, Clerk and Treasurer," and has affixed to it the corporate seal of the corporation.

Subsequent to the time when this bond came into the possession of the plaintiff, which time is not stated, sundry payments were made upon it to the plaintiff "by former Town Councils of Yorkville, the first credit endorsed being dated 17th June, 1863, and the last 5th May, 1868. There is no dispute that the work for which this bond was given was done and that the corporation enjoyed the benefit thereof, the defenses relied upon being mainly of a technical

character. Such defenses, though not recommending themselves to the favorable consideration of the Court, must nevertheless be fairly considered, and, if ascertained to be well founded, will be accorded their due weight.

The first ground of defense was that the action was against the parties named as defendants in their individual capacity and not as the Town Council of Yorkville. It will be sufficient to say, in answer to this position, that even were there anything in it the defendants have failed to present the objection at the proper time and in the proper way and can now claim no benefit from it. The next position taken by the appellants is that the plaintiff has mistaken the corporate name of the corporation which she designed to sue, her action being against the Town Council of Yorkville, while the proper corporate name, as it is alleged, is "Yorkville," by which name alone can it be sued. Without stopping to inquire whether, even according to the theory of the appellants, there is such a variation from the precise name of the corporation as would make this objection available, especially when it is remembered that as early as the time of Lord Coke a corporation was severely censured for attempting to set aside its own grant by reason of misnomer in its own name, (10 Co., 126, a; 2 Kent. Comm., 236; Dillion on Municipal Corporations, § 121,) or whether if there was a misnomer it should not have been distinctly set up in the answer, or whether if so set up it was not an error that was amendable, as of course, (*Bank of Havana* vs. *Magee*, 20 N. Y. Rep., 355; *Traver* vs. *The Eighth Avanue Railroad Company*, 6 Abb., N. S., 46,) we think that the appellants are in error in supposing that there is any mistake in the name of the corporation here sued.

There is no foundation for the assumption that the name assigned by statute to this corporation is "Yorkville." None of the Acts to which we have been referred assign *any* name to this corporation in *express terms*, but the implication from all of them is that the name of the corporation is the "Town Council of Yorkville." In the Act of 1849, (11 Stat., 588,) the language is that "all persons * * * * in the village of York * * * * shall be deemed, and are hereby declared, a body politic and corporate, and that *the said village* shall be known by the name of Yorkville," &c. The corporation is one thing, composed of the persons residing in a certain village, while the village itself is another thing, to which the name of Yorkville is assigned. As not unfrequently happens,

a corporation, composed of persons residing within certain territorial limits, may have one name, while another name is assigned to the territory embraced within such limits, be it village, town or city. It will also be noticed that all the corporate powers granted by this Act are conferred upon and are to be exercised by the Intendant and Wardens, who the Act in its 4th Section declares "shall be known by the name of the Town Council of Yorkville, *and they and their successors in office shall have* a common seal," &c. Now, if, as we have seen, this Act does not in *express terms* assign any name to the corporation thereby created, but proceeds to invest a certain body—the Intendant and Wardens—with all the corporate powers conferred, and declares that such body shall be known by a certain name, the necessary inference is that such name was designed to be the name of the corporation, otherwise the result would be that the corporation would have one name, while the body invested with all the corporate powers would have another. So, too, the Act of 1871 (14 Stat., 562,) declares that "all citizens of this State having resided sixty days in the town of Yorkville shall be deemed, and are hereby declared to be, a body politic and corporate, and the *said town* shall be called and known by the name of Yorkville," &c.

The remarks which have been made in reference to the Act of 1849 apply equally to this Act, to which we may add that if the Legislature had intended to assign the name of Yorkville to the corporation, and not to the village or town merely, they certainly would have used language more appropriate to such a purpose. If such had been their design, the most natural as well as the most correct form of expression would have been, after declaring certain persons a body corporate, to say, *which* shall be known by the name of Yorkville. In this Act, also, all the corporate powers are conferred upon the Intendant and Wardens, who the Act, in its fifth section, declares "shall be known by the name of the Town Council of Yorkville, and they and their successors, hereafter to be elected, *may have* a common seal," &c. It will be observed, too, that in the Act of 1855 (12 Stat., 470,) and in the Act of 1861 (12 Stat., 921,) the Legislature, in conferring additional powers upon this corporation, in both instances designate it as the "Town Council of Yorkville," and in no Act to which we have been referred, or which we have been able to find, is this corporation designated by the name of Yorkville. This objection, therefore, cannot avail the appellants.

The next ground upon which appellants insist is that the Town Council of Yorkville had no authority to execute the bond in question. To determine this question it is necessary to keep in mind the character of this bond and the purpose for which it was given. It is not a coupon bond, issued for the purpose of "a commercial investment," but is simply an obligation of the corporation, given as a voucher or in payment for work done for the corporation under a contract with it, which the corporation unquestionably had the right to make. The two classes of obligations are wholly distinct and different. For, as said by Bradley, J., in the case of the *Police Jury* vs. *Britten,* (15 Wall., 568,) "it is one thing for County or parish trustees to have the power to incur obligations for work actually done in behalf of the County or parish and to give proper vouchers therefor, and a totally different thing to have the power of issuing unimpeachable paper obligations," &c. And, in another part of the same opinion, he says: "That a municipal corporation which is expressly authorized to make expenditures for certain purposes may, unless prohibited by law, make contracts for the accomplishment of the authorized purposes, and thereby incur indebtedness and issue proper vouchers therefor, is not disputed. This is a necessary incident to the express power granted." The same distinction is recognized in the subsequent case of *The Mayor* vs. *Ray,* (19 Wall., 468,) where it is said: "Indebtedness may be incurred to a limited extent in carrying out the objects of the incorporation. Evidence of such indebtedness may be given to the public creditors." And, again, "vouchers for money due, certificates of indebtedness for services rendered, or for property furnished for the uses of the city, orders or drafts drawn by one city officer upon another, or any other device of the kind used for liquidating the amounts due to public creditors, are, of course, necessary instruments for carrying on the machinery of municipal administration and for anticipating the collection of taxes."

So that even these two cases, which seem to be mainly relied upon by the appellants to show the incapacity of this corporation to issue the bond in question, clearly recognize the power of a municipal corporation to issue obligations like the one here sued upon. Hence it is unnecessary for us to consider further the question as to the power of a municipal corporation, without express authority, to issue negotiable commercial paper, as coupon bonds are now recognized to be, inasmuch as the bond in question does not belong to that class.

The corporation, in this case, having been invested with authority "to make contracts for lighting the streets of said town with gas," (§ 19 of Act of 1861, 12 Stat., 921,) and the contract sued upon in this case being a bond given for work done under a contract made for that purpose, there can be no doubt of the authority of the corporation to execute such a bond.—Dillon on Mun. Corp., § 372; *Trustees of the Baptist Church of Brooklyn* vs. *Fire Insurance Company*, 19 N. Y., 305; *Alleghany City* vs. *McChurchman & Co.*, 14 Penn. Stat., 81. The next position taken by appellants is that there was error in holding that the corporation created by the Act of 1871 was liable on a bond executed by the corporation created by the Act of 1849.

To support this position it is necessary to assume that these two Acts created two distinct and separate corporations, and that the one was not a mere continuation of the other. We are unable to find any warrant for such an assumption; and, on the contrary, we think it clear that the two Acts both relate to the same corporation, and that it was not the intent of the Act of 1871 to destroy the previously existing corporation, but simply to enlarge and alter it by adding additional corporators and making certain alterations in its corporate powers. We certainly cannot impute to the Legislature the design of abrogating the previous corporation without making provision for the settlement of its affairs—the payment of its debts, &c.—(and no such provision is to be found in the Act of 1871,) and the most reasonable construction of the Act is that the Legislature simply designed to continue the previously existing corporation, with such changes and additions as the new condition of things seemed to demand.

It will be noticed, too, that the terms of the 3d Section of the Act of 1871 recognize the previously existing corporation, for that Section provides, not as is usual when an entirely new municipal corporation is created, that the first election for town officers shall be held by such Managers as shall be appointed by the Clerk of the Court or Commissioners of Election for the County in which such town may be situated, but the language is "the Intendant and Wardens shall appoint three Managers to hold *the ensuing* and any subsequent election." Now, what Intendant and Wardens can possibly be referred to but those of the previously existing corporation, of which the one provided for by this Act was intended to be a mere continuation?

The rule of law as stated by Dillon in his work on Municipal Corporations, Section 116, is this: "Where a statute or charter revives or continues an old corporation, the new corporation is subject to all the liabilities of the old corporation, of which it is but a continuation." Again, he says in Section 115: "The name of an incorporated place may be changed, its boundaries enlarged or diminished, and its mode of government altered, and yet the corporation not be dissolved, but in law remain the same." And, again, "transition from town to city organization does not dissolve the corporation or extinguish its indebtedness." So that it is very clear that this exception is not well founded.

The next point raised by the appellants is that the bond in question "was not executed as provided by the statute, and, therefore, not binding on the defendants." We are unable to discover in the charter of this corporation or any of its amendments any provision prescribing. any particular mode of executing a bond, and, therefore, even were there no authority upon the point, we should not hesitate to adopt the conclusion that the mode pursued in this case was the most usual, natural and proper one—that it should be signed by the head of the corporation, the Intendant, and countersigned by the Clerk and Treasurer, under the corporate seal, of which he was the proper custodian.

The idea that it was necessary that the bond should be signed by all of the members of the Town Council has no warrant in law and is contrary to the usual and approved practice. In Dillon on Municipal Corporations, Section 131, it is said that "the corporate seal attached to an instrument, attested by the signatures of the proper officers, is *prima facie* evidence that it was lawfully placed there and that the instrument is the act of the corporation." In this case, so far from this *prima facie* evidence being rebutted, there is evidence of repeated acknowledgments of the validity of this obligation by three different payments in three several years, presumably by three different Town Councils, as the charter provides for the election of Intendant and Wardens every year. These payments would of themselves be sufficient to estop the defendants from making the defense here set up. For while it may be true, as held in *Loan Association* vs. *Topeka*, (20 Wall., 667,) that such payments would not operate as an estoppel where the corporation had no authority to issue the bond, yet, inasmuch as we have seen that this corporation did have authority to issue the bond now in question,

the principle decided in that case has no application to the question under consideration.

It is very obvious that, in the view which we have taken of this case, the plea of the Statute of Limitations cannot be sustained.

In Dillon on Municipal Corporations, Section 380, it is said: "If the corporation  *  *  * has a common seal,  *  * .* and it is affixed to an instrument, in pursuance of a vote of the corporation, or by the proper officer, such an instrument is, beyond doubt, technically the deed of the corporation."

The second case above stated, though differing in some of its details, does not, in any material respect, differ in the principles which should govern it. It was an action brought by the plaintiffs, Currence and Watson, as the lawful owners and holders of a bond, bearing date the 11th of February, 1861, whereby "the Intendant and Wardens of the town of Yorkville" bound themselves and their successors in office unto A. J. Daviney, in the sum of eleven hundred dollars, for the payment of five hundred dollars to said Daviney on the 1st day of January, 1862, with interest from the 1st of December, 1860. This bond was signed by the Intendant and the four Wardens and sealed with the corporate seal of the corporation. On the 4th of March, 1861, it was duly assigned to the plaintiffs, and on the 16th of March, 1868, a payment was made thereon by the Intendant of said town. This bond does not, as in the former case, recite what it was given for, but the Circuit Judge finds that it was given for work done in macadamizing the streets of Yorkville, pursuant to the terms of a contract entered into by the corporate authorities of said town with said Daviney, and that "the town has received and still enjoys the benefits of the work done," and as there was no exception to this part of the decision of the Circuit Judge we may assume that such were the facts.

While we think that this case should be governed by the principles established in the first case, and that, therefore, the appeal cannot be sustained, we may say that there is an additional and conclusive reason for dismissing the appeal in the second case which was not made to appear in the first. By the Act of 1853, (12 Stat., 304,) as amended and extended by the Act of 1854, (12 Stat., 386,) "the Intendant and Wardens of the village of York" were expressly authorized, at their discretion, to issue interest-bearing bonds to an amount not exceeding five thousand

dollars, which, of course, would be sufficient to authorize the issuing of the bond now in question. It is contended, however, that the authority conferred by these Acts had been exhausted by the corporation prior to the issuing of this bond, inasmuch as, prior to that time, the corporation had issued bonds to an amount exceeding the sum authorized. This position depends upon a question of fact which has been decided adversely to the appellants by the Circuit Judge, who says that the evidence was not sufficient to show that bonds to the amount of five thousand dollars had been previously issued. This decision by the Circuit Judge of a question of fact, according to the well-established rule of this Court, we regard as conclusive, unless shown to be manifestly erroneous. So far from finding this to be the case, we would be inclined to adopt his conclusion even were the question an entirely open one. The burden of proof was on the corporation to show what amount of bonds had been issued under the authority of these Acts. They had, or at least ought to have had, in their possession precise and definite evidence of the number and amount of bonds issued by them in the shape of a registry or something of that kind, and, in the absence of any such evidence, we do not think the loose, indefinite testimony, consisting of extracts from their minutes showing the adoption of resolutions "that this Council *will issue* a bond or bonds for the sum of $400.27, in such amounts as the said Wm. M. Kerr may desire," &c., or "that the Intendant is *authorized to execute a bond*," &c., without some evidence showing the *actual issue* of such bonds, by any means sufficient to establish the fact that the corporation had exhausted the authority conferred by these Acts. Nor do we think that the appellants' case is bettered by the testimony of the Treasurer that an account showing sundry payments on sundry bonds was correct, especially when such account does not show whether such payments were made on account of interest or principal, and when, too, the small amounts of a number of these payments would seem to indicate that such payments were of interest and *not* of principal.

We are unable to perceive the force of the position that the limitations contained in the proviso to the Act of 1854 entered into and was a condition of any bond issued by the corporation after that date, nor can we see its application to this case. That proviso is in the following words: " *Provided,* That the private property of the citizens of said town shall not be liable for the payment of said

bonds or other corporate liabilities that may be created by virtue of this Act in any other mode than by a regular and uniform taxation, as provided in the Acts aforesaid." It was simply designed to protect the private property of the citizens of the town from being made liable for the payment of any bonds issued under the authority of these Acts, except by a regular and uniform taxation, and as we do not understand that any effort has been or ever will be made to make such property liable in any other way we are at a loss to understand the force of this objection. When such an effort is made, it will be time enough then to consider what we now regard as a purely abstract question. Surely it will not be contended that the last words of the proviso—" as provided in the Acts aforesaid "—should operate to deprive the Legislature, at any subsequent time, of the power to authorize the corporation to impose an additional rate of taxation on real estate, or to subject other species of property to municipal taxation, or that, in case of such additional taxing power being given, the money derived from such additional taxes should not be applied to the payment of such bonds. Such a construction would be not only very extraordinary, but also a manifest perversion of the terms of the proviso, which, as we have said, was designed simply to protect the private property of the corporators from being subjected to the payment of these bonds except through a system of regular and uniform taxation. The position that, as the Intendant and Wardens are invested, by the charter, with all the powers of Commissioners of Roads, for the purpose of enabling them to keep the streets of the town in good repair, they can do no more than such Commissioners, and, therefore, could not issue a bond for work done on the streets any more than the Commissioners of Roads could have issued a bond for work done upon the highways, cannot be sustained. This proposition rests upon the assumption that not merely the *same* powers were granted to the Intendant and Wardens as were conferred upon the Commissioners of Roads, but *none other.*

This assumption is manifestly unfounded, as, in the very next Section to that giving the Intendant and Wardens the same powers as those granted to the Commissioners of Roads, additional power is given to the Intendant and Wardens which was not possessed by the Commissioners of Roads, viz., the power to compound with such persons liable to work upon the streets as may desire it upon the payment by them of such a sum of money as the Intendant and

Wardens might deem a fair equivalent therefor, which money was to be applied, not to the payment for repairs of the streets alone but "to the uses of the corporation." This shows very clearly the intention of the Legislature not only to give the Intendant and Wardens all the powers which had been conferred upon the Commissioners of Roads but also the additional power to commute with persons liable to road duty by the payment of money. And this necessarily involved the idea that the repairs of the streets was not to be effected by the labor of persons liable to road duty alone but by hired labor also—that is, by labor under contract. And if the corporation had the power to make contracts for the repairs of the streets, they had, as we have seen while considering the former case, the power necessarily incident thereto—the power to execute obligations for the payment of the money due under such contracts.

The judgment of the Circuit Court in each of the above stated cases is affirmed.

*Willard*, C. J., and *Haskell*, A. J., concurred.